UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. EXPLORER PIPELINE COMPANY )<br>  Plaintiff )<br> )<br>v. )<br> )<br>1. AMERICAN GUARANTEE & )<br>  LIABILITY INSURANCE COMPANY )<br> )<br>  Defendant ) | Case No. 17-CV-330-GKF-FHM<br><br>JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT

Plaintiff, Explorer Pipeline Company ("Explorer"), for its First Amended Complaint against Defendant American Guarantee & Liability Insurance Company ("AGLIC"), alleges and states as follows:

## NATURE OF COMPLAINT

1. This is an action for monetary damages and declaratory judgment arising out of AGLIC's breach of its insurance contract with Explorer.

## PARTIES

2. Explorer is a Delaware corporation with its principal offices at 6120 S. Yale Ave., Tulsa, Oklahoma 74136-4250.

3. AGLIC is an insurance company organized and existing under the laws of New York with its principle place of business in Schaumburg, Illinois.

4. AGLIC is licensed by the Oklahoma Insurance Commission to do business in Oklahoma and can be served with process through the Oklahoma Insurance Commissioner pursuant to Okla. Stat. tit. 36 §§ 621, 622.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as it concerns a controversy between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) insofar as AGLIC resides in the Northern District and a substantial part of the events or omissions giving rise to the claim occurred in the Northern District.

## FACTS

7. Explorer is a pipeline company, headquartered in Tulsa, Oklahoma, that owns and operates a pipeline and associated facilities extending from Port Arthur, Texas (near Houston, Texas) to Hammond, Indiana (near Chicago, Illinois) (the "Pipeline").

8. Explorer obtained a contract of insurance from AGLIC (the "Policy") which was entered into and delivered in Tulsa, Oklahoma to provide coverage for the Pipeline and any damages (including costs of investigation and remediation) incurred in connection with the release of petroleum products from the Pipeline. The Policy is to be governed and construed according to Oklahoma law.

9. The Policy was an Excess Liability Policy (Policy No. EOG 9309894-01) issued to Explorer, on a follow form basis, effective October 1, 2003 to October 1, 2004.

10. The Policy provided liability coverage of twenty-five million dollars each occurrence/aggregate, in excess of a five million dollar self-insurance retention.

11. The insurance policies underlying the Policy included a twenty-five million dollar policy (Policy No. GE 2977830) issued by National Union Fire Insurance Company of Pittsburgh, PA (the "National Union Policy") and a twenty-five million dollar first layer excess

policy (Policy No. C000931/002) issued by Allied World Assurance Company, Ltd. ("AWAC Policy").

12. On or about September 28, 2004, the Pipeline unexpectedly ruptured near Holdenville, Oklahoma, resulting in the release of diesel fuel into the environment (the "Release").

13. Explorer determined that the released diesel fuel permeated the subsurface soil and rock formations to a depth of approximately 40 feet and migrated through fractures in the subsurface rock.

14. The Oklahoma Corporation Commission ("OCC") is the state agency with jurisdiction over the cleanup of the Release from the Pipeline.

15. The landowner demanded Explorer remove the contamination, restore the property, and pay him for all damages suffered in connection with the release. In addition, OCC has directed Explorer to investigate and remediate the Release.

16. Upon evaluating the results of the investigation and potential methods for remediating the Release, Explorer and its consultants determined that the most effective method to remediate the diesel fuel would be to excavate the impacted soil and treat the soil ex-situ. This information was reviewed by National Union and later, AWAC, both of which agreed with the conclusions.

17. The approved remediation process involves excavating and stockpiling uncontaminated soil, excavating the soil and rock contaminated by the Release, treating the contaminated soil and rock using an on-site thermal desorption system, stockpiling the treated materials as necessary and backfilling and restoring the area with the treated materials and uncontaminated soil.

18. Explorer sought competitive bids for the remediation work and awarded the contract to James R. Roderick and Associates ("Roderick") in or about July, 2005.

19. As of December 31, 2016, Roderick had excavated and treated approximately 1,340,000 tons of soil at the site.

20. To date, Explorer has expended over $65,500,000 on the investigation and remediation of the Release and expects to spend significant additional amounts to complete the remediation project.

21. Throughout the remediation process, Explorer worked closely with National Union and, later, with AWAC to review progress, evaluate potential remediation alternatives and cost reduction measures, and receive approval of its actions.

22. The costs incurred by Explorer in connection with the investigation and remediation of the Release are covered damages under the National Union, AWAC and AGLIC policies.

23. Explorer has paid the self-insured/retailed liability amount of $5,000,000 under the Policy toward investigation and remediation of the Release.

24. The issues and total accumulating costs at the site were discussed during Explorer's annual underwriters meetings attended by AGLIC representatives from 2012 through 2016, at well as several earlier underwriters meetings.

25. In August 2015, Explorer and Marsh informed Ryan McGeehan (AGLIC) that, based on the recent discovery of additional free product from ongoing excavation, as well as the results of recent contamination delineation work at the Site, AGLIC's layer of coverage would likely be triggered. This information was followed by a formal notice of

4

claim provided to, and acknowledgment received from, AGLIC on or about November 11, 2015.

26.  As of November, 2015, both National Union and AWAC had paid the limits of their policies ($25,000,000 each) to Explorer for covered damages associated with the investigation and remediation of the Release without any reservation of rights.

27.  As of November 15, 2015, Explorer met the damage threshold necessary to trigger coverage under the AGLIC Policy by virtue of having exhausted the $5,000,000 self-insurance amount and the two $25,000,000 policy limits for covered damages under the National Union and AWAC policies.

28.  In response to Explorer's notification to AGLIC that its layer of coverage would be utilized, AGLIC engaged in an unreasonable and protracted effort to delay or forego payment of remediation costs incurred by Explorer by:

a.  Failing to make a reasonably timely coverage determination, despite such a determination having been previously made by National Union and AWAC.

b.  Falsely stating that AGLIC did not have enough information to make a coverage determination.

c.  Taking unreasonable and unsupportable positions on coverage issues.

d.  Asserting unreasonable interpretations of the Policy, which if adopted, would make coverage illusory.

e.  Refusing to timely disclose and discuss AGLIC's questions or concerns regarding coverage issues with Explorer.

f.  Asserting defenses to coverage without reasonably investigating or discussing such matters with Explorer.

g. Failing to make a timely site visit to gain an understanding of the contamination and issues at the site and of the work being performed, and otherwise unreasonably delaying investigation of the claim.

h. Making repeated unreasonable demands for excessive information and failing to provide a reasonable explanation as to why such information was needed.

i. Making repeated unreasonable demands, based on a lack of understanding of the site, for information that was not in existence.

j. Making repeated unreasonable demands for information in the form desired by AGLIC and not reasonably available to Explorer.

k. Unreasonably refusing to acknowledge exhaustion of the limits of the National Union and AWAC policies despite being provided sufficient information with which to do so.

l. Unreasonably asserting that certain communications from Explorer evidenced that no expense was incurred by Explorer at the site.

m. Unreasonably questioning remediation expenditures approved and paid by National Union and AWAC, and thereby asserting underlying policies were not exhausted.

n. Unreasonably asserting certain actions taken by Explorer as part of the remediation effort were unnecessary, too costly, or inefficient.

o. Unreasonably demanding certain remedial activities be terminated or halted while AGLIC's investigation of the claim continued apparently without end.

p. Unreasonably asserting the remedial action could have been concluded under prior coverage layers.

q. Unreasonably asserting that Explorer was not cooperative and/or did not mitigate its damages.

r. Unreasonably requiring delay in review of costs submitted by Explorer for reimbursement until after pursuing a risk-based closure with OCC.

s. Conducting a biased investigation.

t. Unreasonably refusing to pay all of Explorer's damages.

u. Unreasonably burdening the litigation and causing unnecessary expense by seeking irrelevant and burdensome discovery from third parties for the purpose of causing Explorer to accede to demands to dismiss or unreasonably settle the dispute.

29. Despite the payment of the full limits of the underlying policies by National Union and AWAC (a total of $50,000,000) toward investigation and remediation of the Release, AGLIC has refused and continues to refuse to honor its identical obligations for payment of covered damages under its Policy and has instead engaged in a payment delay strategy beginning in approximately November, 2015, and continuing through the present – approximately two and a half years.

30. Between November 15, 2015 and June 2018, Explorer submitted to AGLIC claims for payment of covered damages in the total amount of $9,794,799.45 as follows:

| Invoice Date | Submission No. | Amount |
|---|---|---|
| Nov. 2015 | 51 | $282,894.45 |
| Dec. 2015 | 55 | $874,452.42 |
| Feb. 2016 | 52 | $951,927.12 |
| Apr. 2016 | 53 | $1,148.396.72 |
| July 2016 | 54 | $992,529.99 |
| Sept. 2016 | 56 | $1,187,864.47 |
| Nov. 2016 | 57 | $1,451.50 |
| Dec. 2016 | 58 | $1,455,353.30 |

| | | |
|---|---|---|
| Mar. 2017 | 59 | $592.50 |
| April 2017 | 60 | $1,729,444.49 |
| Sept. 2017 | 61 | $1,059.00 |
| Oct. 2017 | 62 | $42,695.97 |
| Oct. 2017 | 63 | $8,715.00 |
| Jan. 2018 | 64 | $1,979.98 |
| Jan. 2018 | 65 | $15,217.91 |
| Feb. 2018 | 66 | $1,074,804.52 |
| Apr. 2018 | 67 | $24,360.11 |
| June 2018 | 68 | $1,060.00 |
| **Total** | | **$9,794,799.45** |

31.  To date, AGLIC has paid Explorer only $2,000,000.00 for the above claimed covered damages, subject to a full reservation of rights, including the return of the subject funds.

32.  Unconditional payments for submission Nos. 51-67 are well past due.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

33.  Explorer adopts and incorporates the allegations contained in Paragraph 1 through 32 as if fully set forth herein.

34.  Explorer entered a contract for insurance (the Policy) with AGLIC whereby AGLIC agreed to provide coverage for damages in the form of cost expended for investigation and remediation of pollution from petroleum products released from the Pipeline.

35.  At all times material hereto, including the time of the Release, the Policy was in full force and effect and Explorer had fully paid all required insurance premiums.

36.  Explorer has timely and properly presented a claim for reimbursement of losses covered under the AGLIC Policy.

37. Explorer has complied with the terms and conditions of the Policy and all conditions precedent to payment thereunder by AGLIC for the expenses incurred in connection with the investigation and remediation have been performed or have occurred.

38. As of June 2018, Explorer has expended approximately $9,794,799.45 which is subject to payment as covered damages under the Policy.

39. AGLIC has failed to make full and unconditional payment of such damages to Explorer, without reservation of rights.

40. By failing to pay Explorer's covered damages for the costs of investigation and remediation under the Policy, AGLIC has breached its contractual obligation under the Policy.

41. As a result of AGLIC's breach of contract, Explorer has suffered and will continue to suffer significant financial loss.

## COUNT II
## DECLARATORY JUDGMENT

42. Explorer adopts and incorporates the allegations contained in Paragraph 1 through 41 as if fully set forth herein.

43. Explorer seeks declaratory judgment pursuant to 28 U.S.C. § 2201 for purposes of determining a question of actual controversy between the parties concerning Explorer's coverages under the subject policy.

44. Explorer seeks a declaration that the Policy provides full coverage for payment of past costs expended and all future costs to be incurred by Explorer to complete remediation of the Release and restoration of the land in accordance with the requirements of the OCC until Policy limits are exhausted.

45. Explorer further seeks a declaration that, under the follow form excess policy at issue, AGLIC is not permitted to review or challenge decisions of prior carriers approving actions taken to investigate/remediate the Release and restore of the land.

## COUNT III
## BAD FAITH

46. Explorer adopts and incorporates the allegations contained in Paragraph 1 through 45 as if fully set forth herein.

47. There is implied in the Policy between the parties a covenant of good faith and fair dealing wherein AGLIC covenanted that it would, in good faith and in the exercise of fair dealing, deal with Explorer fairly and honestly and do nothing to impair, interfere with, hinder or potentially injure Explorer's rights to receive the benefits of the Policy.

48. AGLIC accepted a duty to honor its contractual obligations by entering into the contract of insurance that is embodied in the Policy.

49. AGLIC, in its investigation, evaluation, and handling of, and failure to pay Explorer's claim, has breached its covenant of good faith and fair dealing and failed to act in good faith and deal fairly with respect to the interests of Explorer as set forth above in Paragraph 28.

50. AGLIC had no reasonable basis for the actions set forth in Paragraph 28 above and pursued its investigation, evaluation and delay in paying Explorer's claim with bad intent, maliciously, and in knowing and intentional disregard of its obligations under the parties' contract.

51. AGLIC's breach of its duty of good faith and fair dealing has and will cause Explorer to suffer both general and special damages in amounts not yet fully determined, including but not limited to, the following damages:

    a. Benefits payable under the Policy;

    b. Pre-judgment interest thereon; and

    c. Attorney's fees necessarily incurred by Explorer to obtain the benefits under the Policy.

    d. Attorney's fees incurred by Explorer by reason of Defendant's excessive discovery and burdensome litigation tactics.

52. AGLIC's conduct was intentional, willful, malicious and in reckless disregard of Explorer's rights, and is sufficiently egregious in nature to warrant the imposition of punitive damages.

## PRAYER FOR RELIEF

Wherefore, Explorer Pipeline Company respectfully requests the Court to enter judgment in favor of Explorer and against AGLIC, Inc. for the following:

A. Payment of all contractual benefits for coverages afforded to Explorer under the Policy in connection with investigating and remediating the Release and restoring the land in accordance with the requirements of the OCC.

B. Declaratory judgment requiring AGLIC to pay future costs incurred by Explorer in connection with investigating and remediating the Release and restoring the land in accordance with the requirements of the OCC until Policy limits are exhausted.

C. Declaratory judgment that AGLIC is not permitted to review or challenge decisions of prior carriers approving actions taken by Explorer to investigate/remediate the Release and restore of the land.

D. Payment of pre- and post judgement interest on all amounts due.

E. Payment of punitive damages.

F. Payment of attorneys' fees, expert fees, costs and expenses for this action.

G. Such other relief as the court finds just and proper.

Respectfully submitted,

*/s/Robert J Joyce*
Robert J. Joyce, OBA #12728
Gerald L. Hilsher, OBA #4218
McAfee & Taft A Professional Corporation
2 West Second St., Ste. 1100
Tulsa, OK 74103
Telephone:(918) 587-0000
Facsimile: (918) 599-9317
robert.joyce@mcafeetaft.com
gerald.hilsher@mcafeetaft.com

**ATTORNEYS FOR PLAINTIFF**
**EXPLORER PIPELINE COMPANY**

## **CERTIFICATE OF SERVICE**

   I hereby certify that on the 25th day of July, 2018, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of the Electronic filing to the following ECF Registrants

Dale E. Cottingham
Craig M. Regens
GableGotwals
211 N. Robinson Avenue, 15th Floor
Oklahoma City, OK 73102
dcottingham@gablelaw.com
cregens@gablelaw.com

Michael M. Marick
Hinshaw & Culbertson LLC
222 N. LaSalle Street, Suite 300,
Chicago, Illinois 60601
mmarick@hinshawlaw.com

Kyle M. Medley
Hinshaw & Culbertson LLC
800 Third Avenue, 13th Floor,
New York, NY 10022
kmedley@hinshawlaw.com

                *s/Robert J. Joyce*